## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SAI DIVYA KANCHARLA,

       Plaintiff,

vs.

EQUIFAX INFORMATION SERVICES
LLC, TRANS UNION, LLC, AND
COLUMBIA DEBT RECOVERY LLC
d/b/a GENESIS CREDIT
MANAGEMENT,

       Defendants.

Case No.: 8:25-cv-03335

**JURY TRIAL DEMANDED**

## COMPLAINT

Sai Divya Kancharla ("Plaintiff" or "Ms. Kancharla"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"); Trans Union, LLC ("Trans Union") (collectively, the "Credit Bureau Defendants"); and Columbia Debt Recovery LLC d/b/a Genesis Credit Management ("Genesis"); (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal

1

Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.    However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec.

3

36570 (1970)] (emphasis added).

8.    The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10.    The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.    Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that Plaintiff had an account with an outstanding balance in collections for an apartment rental when in fact no money was owed.

12.    Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.    Plaintiff also brings a claim against Defendant Genesis Credit Management LLC for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

//

## PARTIES

15.     Sai Divya Kancharla ("Plaintiff" or "Ms. Kancharla") is a natural person residing in Davenport, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC. ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Florida, including within this District. Equifax can be served through its registered agent Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Florida, including within this District. Trans Union can be served through its registered agent Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

19.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

20.    Defendant Columbia Debt Recovery LLC d/b/a Genesis Credit Management ("Genesis") is a limited liability company with a principal place of business located at 906 SE Everett Mall Way, Everett, Washington, 98208. Genesis can be served through its registered agent Corporate Service Company, 300, Deschutes Way SW STE 208 MC-CSC1, Tumwater, Washington, 98501.

21.    Genesis is a debt collector and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

//

## FACTS
## Summary of the Fair Credit Reporting Act

24.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

25.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

26.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

27.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting

agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

28.    The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## Factual Background

29.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

30.    The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

31.    Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

32.    Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

9

33.    The Credit Bureau Defendants' consumer reports generally contain the following information:

(a)    Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)    Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)    Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

(d)    Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

34.    The Credit Bureau Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA by furnishers.

//

35.    The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like the Credit Bureau Defendants) to make lending decisions.

36.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the Credit Bureau Defendants' consumer reports.

37.    The information the Credit Bureau Defendants includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

38.    FICO Scores are calculated using information contained in the Credit Bureau Defendants' consumer reports.

39.    The Credit Bureau Defendants know that FICO and other third-party algorithms (as well as the algorithms owned by the Credit Bureau Defendants) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

40.    The Credit Bureau Defendants know that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

41.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

42.    The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

43.    The Credit Bureau Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

44.    The Credit Bureau Defendants fail to employ reasonable procedures to assure the maximum possible accuracy of the information that they report about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

45.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against the Credit Bureau Defendants for their inaccurate credit reporting.

46.    Thus, the Credit Bureau Defendants are on continued notice of their respective inadequate reporting procedures. Specifically, the Credit Bureau Defendants are on notice that their inadequate procedures regularly result in the

reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

47.    The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants reported inaccurate information about them.

**Plaintiff Moves Out of Rental and Pays Final Invoice**

48.    Plaintiff and her husband were renting a property with Vista Verde. In August 2022, Plaintiff and her husband moved out of the apartment before their lease was up.

49.    Accordingly, Vista Verde emailed Plaintiff the final invoice for $674 on August 22, 2022.

50.    Upon receipt of the invoice Plaintiff attempted to make the payment online, but there was an error, and the payment did not go through.

51.    On or about August 22, 2022, Plaintiff informed the Vista Verde Community Manager that she was having an issue submitting her payment online. The Community Manager informed Plaintiff that the online payment issue had been corrected and to try submitting her payment again.

52.    Plaintiff again attempted to submit her payment online, but the payment still failed to go through.

//

53.    On or about August 23, 2022, Plaintiff reached out via email to Marta Diaz, the business manager at Vista Verde concerning the continuing issues Plaintiff was having when she tried to submit her final payment online. It was agreed that Plaintiff could submit her final payment of $674 via money order.

54.    In August 2022, shortly after the email exchange between Plaintiff and Ms. Diaz, Plaintiff's husband dropped off two money orders, No. 19412994033 in the amount of $500 and No. 1942994034 in the amount of $174, at the front desk of Vista Verde.

55.    On October 7, 2022, Plaintiff received an email from Cameron Tillett, the Leasing Professional, regarding Plaintiff's resident ledger. The ledger confirms receipt of the money orders on September 19, 2022. Also, the ledger shows that on September 20, 2022, Plaintiff's balance was zero.

**Plaintiff Begins to Receive Collections Calls and Texts**

56.    In or around March 2025, Plaintiff began receiving debt collection calls and texts regarding the alleged $674 debt to Vista Verde.

57.    On March 4, 2025, Plaintiff received a text from Genesis attempting to collect the alleged debt to Vista Verde.

58.    On March 21, 2025, Plaintiff received a move-out statement from the Vista Verde Property Management stating that she does not owe any balance.

//

59.    On May 6, 2025, May 20, 2025, and July 2, 2025, Plaintiff received additional text messages from Genesis attempting to collect a debt to Vista Verde that she does not owe.

60.    On July 2, 2025, Plaintiff replied to Gensis' text message stating "Stop."

**Defendants Report that Plaintiff's Vista Verde Account as in Collections**

61.    In or around June 2025 or July 2025, after receiving the calls and texts from debt collectors, Plaintiff reviewed her credit reports online and saw a collection account with Columbia Debt Recovery/Genesis Credit Management ("Genesis Account") for the alleged debt to Vista Verde appearing on her Experian, Equifax and Trans Union credit reports.

62.    Soon after seeing the Genesis Account appearing on her credit reports, Plaintiff disputed the Genesis Account online with Equifax and Trans Union.

63.    On July 9, 2025, Plaintiff received a dispute response from Defendant Equifax in which it verified the Genesis Account as accurate.

64.    On July 15, 2025, Plaintiff received a dispute response from Defendant Trans Union in which it verified the Genesis Account as accurate.

65.    Plaintiff was very upset that the Vista Verde debt that she did not owe appeared on her credit reports and that the Credit Bureau Defendants in their dispute responses verified this debt as accurate.

66.    Plaintiff frustrated and desperate to resolve this issue, decided to seek legal counsel to help her get her credit reports corrected.

67.    On or about July 15, 2025, Plaintiff obtained her credit reports from Equifax and Trans Union from annualcreditreports.com.

68.    Upon review of her credit reports, Plaintiff was distressed to see that all three credit reporting agencies continued to report the Vista Verde account as a collections account.

69.    Equifax in its report dated July 15, 2025, was reporting the account as follows:

> GENESISCRE
> Account No. Ending 3189
> Assigned: January 13, 2025
> Amount $674
> Balance as of July 9, 2025: $690
> Original Creditor: Vista Verde
> Creditor Classification: Rental/Leasing
> Status as of July 9, 2025: Unpaid

70.    Trans Union in its report dated July 15, 2025, was reporting the account as follows:

> Genesis Credit Management LLC
> Account No. 1019XXXX
> Date Opened: January 13, 2025
> Balance: $692
> Original Creditor: Vista Verde
> Past Due: $692
> Pay Status: Collection

//

**Plaintiff Contact's Vista Verde and Genesis Concerning her Account**

71.     On or about July 23, 2025, Plaintiff contacted Vista Verde concerning her account. The Vista Verde representative explained that Vista Verde had sent the account to their collection service, Pay Ready, after they believed the payment was late. The Vista Verde representative confirmed that they had received payment and that Plaintiff did not owe a balance on the account.

72.     On or about July 24, 2025, Plaintiff contacted Genesis via telephone. A Genesis representative explained that the debt was not sold to them, but the Vista Verde property management was using their collection services. Genesis stated that the debt was originally $647, but due to interest the current balance due was $690.

73.     Upon information and belief, Plaintiff paid the balance in full in August 2022, but Vista Verde failed to notify their collection service of the payment.

**Plaintiff's Second Dispute to Defendants Trans Union and
Equifax Regarding the Inaccurate Credit Reporting**

74.     On or about July 28, 2025, Plaintiff disputed the Gensis Account with Trans Union and Equifax via certified mail.

75.     Plaintiff explained in her dispute letter that her account with Vista Verde had been paid in full in August 2022 and enclosed supporting documents as proof. Supporting documents included email communications between Plaintiff and Vista Verde, copy of the money orders, and Vista Verde ledger indicating that

balance was paid in full. Plaintiff additionally enclosed her driver's license and utility bill for proof of identity.

76.    Plaintiff requested that Equifax and Trans Union reinvestigate the disputed information, correct the reporting, and for each to send her a corrected copy of her credit report.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

77.    Upon information and belief, Trans Union sent Defendant Genesis an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2025 disputes to Trans Union.

78.    Upon information and belief, Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's disputes.

79.    Upon information and belief, Defendant Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's July 2025 disputes.

80.    Thereafter, Defendant Trans Union failed to correct or delete the Gensis collection account appearing in Plaintiff's credit file.

81.    On or about August 12, 2025, Plaintiff received a letter from Trans Union acknowledging her dispute.

82.    On or about August 18, 2025, Plaintiff received a letter from Trans Union stating that Trans Union was waiting for the furnisher's response.

83.    Plaintiff never received an additional dispute response from Defendant Trans Union.

84.    On or about September 3, 2025, and September 17, 2025, Plaintiff reviewed her Trans Union reports. The Gensis Credit Management LLC account was still being reported in both the updated Trans Union reports.

85.    Trans Union failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on or about July 15, 2025, or July 28, 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

## Defendant Equifax's Unreasonable Dispute Reinvestigation

86.    Upon information and belief, Equifax sent Defendant Genesis an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2025 disputes to Equifax.

87.    Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

88.    Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's July 2025 disputes.

//

89.     Thereafter, Defendant Equifax failed to correct or delete the Gensis collection account appearing in Plaintiff's credit file.

90.     On or about August 27, 2025, Plaintiff received a dispute response from Equifax stating that the Genesis account was verified as accurate.

91.     On or about September 8, 2025, Plaintiff reviewed her Equifax credit report, and the Genesis account was still being reported in the updated credit report.

92.     Equifax failed to conduct a reasonable reinvestigation of Plaintiff's disputes tendered in July 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

93.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

94.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

95.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

96.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

97.    Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

98.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

99.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

100.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

101.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

//

102.    The data furnishers, like Defendant Genesis, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

103.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Genesis's Unreasonable Dispute Reinvestigation**

104.    Upon information and belief, in or about July 2025, Defendant Genesis received Defendant Equifax's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

105.    Upon information and belief, Defendant Genesis failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's disputes tendered in or about July 2025.

106.    Upon information and belief, Defendant Genesis verified the disputed information as accurate to Defendant Equifax in or about July 2025.

//

107.   Upon information and belief, in or about July 2025, Defendant Genesis received Defendant Trans Union's ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

108.   Upon information and belief, Defendant Genesis failed to review all relevant information provided by Defendant Trans Union regarding Plaintiff's disputes tendered in or about July 2025.

109.   Upon information and belief, in or about July 2025, Defendant Genesis verified the disputed information as accurate to Defendant Trans Union.

110.   Defendant Genesis violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

111.   Plaintiff reasonably believes that Defendant Genesis continues to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff owes a debt to it for her Vista Verde account.

112.   Plaintiff reasonably believes that the Credit Bureau Defendants continued to publish that Plaintiff owes a debt to Genesis for her Vista Verde account.

113.   As a result of the inaccurate credit reporting, the Defendants made it practically impossible for Plaintiff to obtain credit.

114.    On September 16, 2025, Plaintiff applied for a Capital One card. Plaintiff was approved but was given the highest APR of 29.24% and a credit limit of only $7,000.

115.    Upon information and belief, Plaintiff would have been given better terms by Capital One if it was not for the inaccurate credit reporting.

116.    On September 17, 2025, Plaintiff reviewed her credit reports. Both Credit Bureau Defendants had corresponding hard inquiries from Capital One.

117.    Plaintiff and her husband would like to purchase a new home in a better school district for their son.

118.    Due to the inaccurate reporting by Defendants Plaintiff and her husband have had to delay their home purchase because they know the collections account will impact any mortgage applications.

119.    Plaintiff and her husband have also considered renting an apartment in the better school district, but because this collections account is housing related, they know it would be difficult to get approval for an apartment.

120.    Plaintiff is extremely stressed and frustrated by the situation. Plaintiff has had a zero balance with Vista Verde since August 2022. This account being falsely reported and as a result affecting Plaintiff's credit and being able to provide a better education for her son has Plaintiff very emotional to the point of crying.

//

121.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

122.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

123.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is

disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

124. The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

125. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure
### Maximum Possible Accuracy
### (First Claim for Relief Against Defendant Equifax)

126. Plaintiff incorporates by reference paragraphs 62-64, 66-70, 72, 77-79, 89-95, and 115-128 of this Complaint as though fully set forth herein.

//

127.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

128.   On numerous occasions, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

129.   Defendant Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

130.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

131.   As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit

reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

132.   Defendant Equifax's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

133.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure**
**Maximum Possible Accuracy**
**(First Claim for Relief Against Defendant Trans Union)**

134.   Plaintiff incorporates by reference paragraphs 62-63, 65-70, 73, 77-88, and 115-128 of this Complaint as though fully set forth herein.

135.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

136.   On numerous occasions, Defendant Trans Union prepared patently false consumer reports concerning Plaintiff.

137.   Defendant Trans Union readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

138.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

139.   As a result of Defendant Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

140.   Defendant Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

141.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Defendant Equifax)

142.   Plaintiff incorporates by reference paragraphs 62-64, 66-70, 72, 77-79, 89-95, and 115-128 of this Complaint as though fully set forth herein.

143.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

144.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

145.   On at least two occasion during the past year, Plaintiff disputed the inaccurate information with Equifax and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Vista Verde account $674 past due and status in

collections with a balance as of July 9, 2025 of $690 notation reported about her payment history in relation to Plaintiff's collection account with Defendant Genesis.

146.   In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.
.

147.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

148.   As a result of Defendant Equifax's' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

149.    Defendant Equifax' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

150.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Trans Union)**

151.    Plaintiff incorporates by reference paragraphs 62-63, 65-70, 73, 77-88, and 115-128 of this Complaint as though fully set forth herein.

152.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

153.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

154.   On at least two occasion during the past year, Plaintiff disputed the inaccurate information with Trans Union and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Vista Verde account $674 past due and status in collections with a balance of $692 notation reported about her payment history in relation to Plaintiff's collection account with Defendant Genesis.

155.   In response to Plaintiff's dispute, Trans Union failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

156.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

157.   As a result of Defendant Trans Union's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the

expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

158.    Defendant Trans Union's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

159.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT V
### 15 U.S.C. § 1681s-2(b)
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer
(Only Claim for Relief Against Defendant Genesis)**

160.    Plaintiff incorporates by reference paragraphs 57-62 and 105-114 of this Complaint as though fully set forth herein.

161.    Defendant Genesis furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

162.    Defendant Genesis violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly

investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax, Experian, and Trans Union.

163.    As a result of Defendant Genesis's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

164.    Defendant Genesis's conduct, action, and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.


//

165.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Genesis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 5th day of December 2025,

**CONSUMER JUSTICE LAW FIRM PLC**

*/s/Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way

Scottsdale, AZ 85258
T: (941) 263-7310
F: (480) 613-7733
E: ctillman@consumerjustice.com

*Attorneys for Plaintiff,*
*Sai Divya Kancharla*